The opinion of the Court was delivered by
Bermudez, C. J.
The City appeals from a judgment on an exception of no right of action, which declares, that the provisions of the Constitution in force prohibit the judicial collection of taxes due the corporation.
The Articles relied upon by tlie defense arc Articles 210 and 218, which road:
“ There shall be no forfeiture of property for the non-payment of taxes, State, levee, parochial or municipal •, but, at the expiration of the year in which they are due, the collector shall, without suit, and after giving notice to the delinquent, in the manner to he provided hy law, (which shall not be by publication, except in case of unknown owner) advertise for sale tlie property on which the taxes are due, in the manner provided for judicial sales,” etc.
“ All the Articles and provisions of this Constitution regulating and relating to the collection of State taxes and tax sales, shall also apply to and regulate the collection of parish, district, and municipal taxes.”
*734 It is manifest that, but for those Articles, the defense lierein set up would not have been raised, as it cannot be disputed that previous to the adoption of the present Constitution, the City of New Orleans had ample right and full power to enforce, by judicial process, the collection of taxes assessed by and due to her.
The inquiry is, therefore, how far the Constitutional provisions invoked have affected that right and power.
An attentive and intelligent reading of the text at once satisfies the legal and conservative mind that, if it be true that it was designed by the organic law to alter the mode of collection of municipal taxes in the City of New Orleans, the convention never proposed to annihilate at once pre-existing methods, but intended to destroy such only after adequate enabling legislation would have been adopted, to carry out the otherwise inoperative constitutional provisions relied upon.
Tlie words: “In the manner to be provided by law,” are clearly prospective and suspensive.
The objects in view were the prohibition of the forfeiture of property for non-payment of taxes, and the substitution thereof, of summary expropriation without suit, to enforce such payment; but such expropriation was to take place only after notice to the delinquent, given in the manner to he provided by law. No sale was contemplated to take place in the absence of such notice, touching which the law was silent and was to prescribe. As the Legislature was commissioned to legislate on that subject, in order to appily the theory, or carry out the system, and it has not done so, concerning City taxes, the consequence is that the extra-judicial collection of such taxes cannot presently be coerced. In the meantime, as the laws providing for the collection of such taxes by judicial processhave neither been modified nor repealed, as regards the City of New Orleans, it was and is legitimate for it to invoke and to execute them in all their efficacy, such as they stood before the adoption of the Constitution.
A different construction would induce the violent, unreasonable and repulsive inference that the convention deliberately eontempilated mischievously to suspend any and all collection of municipal dues, owing to the City of New Orleans, until the passage of such legislation. This would create a most lamentable interred man or hiatus, fruitful of unmeasurable injury, destructive of tlie actual existence of tlie corporation.
That Article 210 is not self-operative, was formally recognized by the Legislature of 1880, by which Act No. 77 was adopted. That legislation does not, however, refer to tlie City of New Orleans, in the least degree.
*735 It is wisely settled, that where a constitutional provision is not self-operative, and requires legislative action to be put in motion, laws previously in force and not otherwise abrogated, continue in operation until the adoption of the enabling statute. 24 A. 214; 32 A. 1200; 33 A. 873; 34 A. 337; 15 Pet. 449.
In the printed and written briefs, submitted by counsel for defendants, since the argument, the reasons which are supposed to have induced the convention to prohibit the collection of all taxes by judicial proceedings, are forcibly advanced, and the argument is made that the omission of the Legislature to carry out the constitutional provisions, does not render lawful a levy of taxes made in violation of Article 211, which declares that the tax on movable property shall be collected in. the year in which the assessment is made. The counsel further insist, that no lawful levy of such tax on such property can be made from the date of the adoption of the Constitution, unless it be in the year in which the. property is assessed.
The answer to those objections is, that whatever the motives of the convention may have been, the laws providing for the levy and collection of taxes have not been abrogated by the Article in question, which merely directs, that the tax shall bo designated by the year in which it is collectible, and that- the tax on movable property shall be collected in the year in which the assessment is made. The second phrase of the Article is directory. It is intended rather for the benefit of the public treasury than for the relief of taxpayers. The previous laws continue in force until the Legislature shall have passed, as regards the City of New Orleans, appropriate' .legislation for the collection of taxes, both on movable and immovable property, in furtherance of Article 210, touching notice to delinquents.
We have read with some interest the very elaborate, opinion of the District Judge, which displays considerable research. We, however, deem it unnecessary to review the reasoning and the array of authorities, derived from other systems, which it embodies, as we consider that they bear upon issues not necessarily submitted in the present controversy.
It is, therefore, ordered, adjudged and decreed, that the judgment appealed from be reversed, and it is now ordered and adjudged that the exception herein be overruled, and that the defendants answer to the merits. It is further ordered, that this case be remanded to the lower court for further proceedings, according to law; appellees to pay costs in both Courts, from the filing of the exception.
Levy, J., absent.